SARGENT *v.* HEROD, Administrator, *et al.*

In cases of disputed boundary, the general rule is, that courses, distances, admeasurements, and ideal lines, must yield to known and fixed monuments, natural or artificial, upon the ground itself.

Where in an action to settle a disputed boundary, it appeared on the part of the complainant, that five witnesses discovered what they believed were the stumps of the bearing trees of the corner claimed by the complainant as the correct and established corner; that these stumps, in course and distance from the corner, corresponded with the original field notes; that one of them bore marks such as are usually put on bearing trees by surveyors, with a marking iron; that a portion of the letters were indistinct, but two of the witnesses thought they were the letters B. T.; that three of the five witnesses were practical surveyors, and the evidences were such that they did not hesitate to place the corner at the point claimed by complainant as the true corner; that the surveys made by them were in the years from 1845 up to 1854; and that no original corner post was found, but a stake was placed at what the witnesses determined to be the true original corner; and where one of two other witnesses on the part of complainant, was a chainbearer in 1849, when the corner was found and established by the deputy county surveyor, and the other witness was present at the same time, and he testifies that he had known the corner for ten years, and had been shown the stump of the witness tree, which had been cut down many years before for firewood; that he showed the corner to the county surveyor, on the occasion referred to by the other witness; that the surveyor cut into the stump, and found the marks of the surveyor's marking iron; that this stump being taken for that of one of the witness trees, at the proper course and distance from it, the county surveyor established the corner, and from the same, according to the original government field notes, at the proper course and distance, he found what he judged to be the stump of the other witness tree; and the point fixed upon by these two witnesses is identical with the corner claimed by the complainant; and where, on the part of the respondent, it appeared that three witnessess, who are practical surveyors, searched for the stumps of the bearing trees of this corner, but could not find them; that the first witness surveyed the premises in 1852, but could find no stumps such as are spoken of by the complainant's witnesses, or evidences of the corner; that he established the corner at the point claimed by respondent, by apportioning the distance according to the original report of the survey; that the second witness run the line in 1855; that he found no original corner of the quarter section, and no bearing trees to show the corner; that he established the corner at the same point, by apportioning the distance; that the third witness surveyed the land as early as 1850, and twice in the year 1855; that he could find no trace of the original corner; that he had surveyed the land shortly after the land sales of 1837, and after a thorough

search, was satisfied that all evidence of the original corner was gone; that he found a stump of a tree which was a right course, distance, and size, for one of the bearing trees; that it was the stump of a tree that had been cut down seven or eight years, but after a thorough examination, he found no evidence of its being a bearing tree; that it was an old stump, the bark off, and rotten; that it might have been marked, but no signs or marks could be discovered at the time he saw it; and that he would establish the corner at the point claimed by the respondent, by measurement; *Held*, That the weight of evidence was in favor of complainant, and that the corner was originally established at the point claimed by him.

## Appeal from the Dubuque District Court.

THIS is a suit in chancery, to establish the boundary line between the owners of the northwest quarter of the southwest quarter of section four, township 89, range 2 east, and the southwest quarter of the northwest quarter of the same section. The plaintiff claims to have been the owner of the premises first mentioned, since June, 1852, and that the defendants are the owners of the adjoining land on the north; that the lands are mineral lands, and that large quantities of lead ore have been dug and raised on the same, near the dividing line between the parties, which is the east and west centre line of said section; that the eastern part of said line is not disputed, but is identified; that the western terminus, being the original quarter section corner between sections four and five, is not settled, the evidence of the position of the same, to wit, the original bearing trees, having been cut down several years before, and the stumps being decayed, so that their identity rests in parol; that the defendants claim that the corner is one chain and twenty links south of the point claimed by plaintiff; and to the end that multiplicity of lawsuits may be avoided, and the said confusion of boundary line remedied, the plaintiff prays that the corner and boundary line may be established by the court; and that an account may be taken of the quantity of mineral, and the value of the same, received by defendants from the land in dispute; and that they be adjudged to pay the value of the same to plaintiff, and be enjoined from setting up any claim to the premises in dispute. The answer of de-

Diagram of Section 4. T. 89 N. R. 2 E, 5th Mer. as returned to the Gen'l Land Office by the Sur'r Gen'l and according to which the lands were sold and patented.

Sec. 4.

Sec. 33.

A. 63.98.

A. 63.82.

Burton.

Sargent.

6.34   16.00   20.00   40.00

84.59.   80.00

15.92   20.00   40.00

Bur Oak 13 N. 25° W. 2.80 Lks
White Oak 24 N. 47° E. 1.87 "

W. Oak 16 S. 31° W. 1.25
D.º 14 S 25° E. 2.29

Bur Oak 8 S. 15½° E. 1.80
D.º 8 N. 59° E. 2.37

W. Oak 10 S. 2° W. 40
B. Oak 12 N. 44° E. 42

Sec. 4.

A.

B. C.

6.34

35.36

39.36

Diagram of same Section, township and range as found, upon a remeasurement of the westerly boundary of said Sec.
B. is the point at which the corner was placed as testified to by Marsh, Fellows, Lewis, Bills and McDaneld.
C. is the point at which the corner should be placed if all evidence of the original corner is wanting.

fendant admits the title of plaintiff and defendants in the tracts of land as set forth in petition, but denies that the point claimed by plaintiff, as the western terminus of the boundary line between them, is the correct point at which to establish the quarter section corner between sections four and five; denies that the corner was established at the point claimed by plaintiff; that any bearing trees were ever there; and that the stumps referred to are the stumps of the bearing trees of the established corner. They claim the land in dispute, and ask that the corner C, shown in the diagram accompanying the transcript, may be established as the true corner, and the line AC as the true boundary line, between the parties. It is agreed that the government lines were run in 1837; and that the annexed diagram represents the land in dispute, and the lines and corners claimed by each party.

The issue being made between the parties, the testimony taken, was directed to the question, whether there was any proof that the point claimed by the plaintiff was ever established by the government surveyors as the quarter section corner of sections four and five. Five witnesses testify that they discovered what they believed were the stumps of the bearing trees of the corner, marked on the diagram as B, and claimed by the plaintiff as the correct and established corner. These stumps, in course and distance from the corner, corresponded with the original field notes. One of them bore marks such as are usually put on bearing trees by surveyors, with a marking iron. A portion of the letters were indistinct, but two of the witnesses think they were the letters B. T. Three of the five witnesses, were practical surveyors, and the evidences were such, that they did not hesitate to place the corner at B, the point claimed in the diagram, by plaintiff, as the true corner. The surveys made by them were in the years, from 1845 up to 1854. No original corner post was found, but a stake was placed at what the witnesses determined to be the original corner. Of the other two witnesses whose depositions were taken by plaintiff, one of them was a chain-bearer in 1849, when the corner was

found and established by the deputy county surveyor; and the other one was present at the same time, and testifies that he has known the corner for ten years, and had been shown the stump of the witness tree, which had been cut down many years before, for firewood. He showed the corner to the county surveyor, who on the occasion aforesaid, cut into the stump, and found the marks of the surveyor's marking iron. This stump being taken for that of one of the witness trees, at the proper course and distance from it, the county surveyor established the corner, and from the same, according to the original government field notes, at the proper course and distance, he found what he judged the stump of the other witness tree. The point fixed upon and ascertained by these witnesses, is identical, and is shown on the diagram by the letter B, and is the corner claimed by the plaintiff.

The evidence on the part of the defendant, is negative in its character. Three witnesses, who are practical surveyors, testify that they searched for the stumps of the bearing trees of this corner, without success; they could not find them. The first witness surveyed the premises in 1852, but could find no stumps such as are spoken of by plaintiff's witness, or evidences of the corner. He established the corner at C on the diagram, by apportioning the distance according to the original report of the survey. The second witness run the line between the sections three and four, in 1855; he found no original corner of the quarter section, and no bearing trees to show the corner. He established the corner at C on the diagram, by apportioning the distance. The third witness surveyed the land as early as 1850, and twice in the year 1855; he could find no trace of the original corner. He had surveyed the land shortly after the land sales of 1837, and after a thorough search, was satisfied that all the evidence of the original corner was gone. He found a stump of a tree which was a right course, distance, and size, for one of the bearing trees. It was the stump of a tree that had been cut down seven or eight years, but after a thorough examination, he found no evi-

dence of its being a bearing tree.   It was an old stump, the
bark off and rotten; the witness says it might have been
marked, but no signs or marks could be discovered at the
time he saw it.   He says he would establish the corner at C
on the diagram, by measurement.

*Smith, McKinlay & Poor*, for the appellants.

*Wiltse & Blatchley*, for the appellee.

STOCKTON, J.—It is conceded, on the part of the plaintiff,
that the point C on the diagram, claimed by the defendant
as the true corner, is the place where the corner should be
established, if all evidence of the original corner is wanting.
The point C has been ascertained by the witnesses with ac-
curacy, and the surveys were no doubt made by them with
great care; but can we overlook the evidence that the cor-
ner originally established, was at B?   Five witnesses testify
that they found at B what they believed were the evidences
of the original corner.   The testimony of the witnesses for
defendants on the same point, amounts to no more than this;
that they did not meet with such evidences, and were not
convinced that any such existed.   We do not know with
certainty, that they ever examined the stump, taken to be
the stump of the bearing tree, by the witnesses on the part of
plaintiff, and described by them.   They may have been at
another stump than that spoken of by plaintiff's witnesses; for
there is no certainty that their testimony refers to the same
one to which the testimony on part of the plaintiff refers·
But even on the supposition that they all refer to the same
stump, five of the witnesses give their opinion that it is the
stump of the bearing tree of the corner, while three testify
that they were not convinced that it had ever been a bear-
ing tree.   We think that the weight of the evidence is in
favor of the plaintiff, that the corner was originally estab-
lished at B on the diagram.   The general rule is, that
courses, distances, admeasurements, and ideal lines, should

yield to known and fixed mouuments, natural or artificial, upon the ground itself.   *Cleaveland* v. *Smith*, 2 Story, 288.

The judgment of the District Court is therefore affirmed.